IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STANFORD LAMAR,
    Plaintiff,

vs.                                                  Case No.:  5:05cv203/RS/EMT

JAMES CROSBY, JR., et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This cause is before the court on Plaintiff's second amended civil rights complaint (Doc. 27). Leave to proceed in forma pauperis has been granted (Doc. 11).

        Because Plaintiff is proceeding in forma pauperis, the court is required to dismiss the case at any time if it determines that the "action or appeal" is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(B). A complaint is frivolous under § 1915(d) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.* at 327, 109 S. Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. Brown v. Budget Rent-A-Car Sys., Inc., 119

F.3d 922, 923 (11th Cir. 1997). Upon review of the complaint, this court concludes that dismissal of Plaintiff's claims is warranted.

Plaintiff names eleven Defendants in this action:[1] James Crosby, Jr., Secretary of the Florida Department of Corrections (DOC) at the time of the events underlying this action; Tim Whitehead, Warden of Gulf Correctional Institution (GCI); Dr. Sexton, the doctor in charge of the GCI medical department at the time of Plaintiff's injury; A. Ramtree, an inspector at GCI; and correctional officers Heather Merritt, Jennifer L. Brown, David D. Wells, Michael Westerfield, Capers, Joyner and Bullock (Doc. 27 at 1, 2-2, 8, 8-3).

Plaintiff asserts that on July 29, 2004, he was exiting the dormitory to be escorted to his work assignment when he observed several officers engaging in "overly aggressive" and "racist" conduct toward black inmates (Doc. 27 at 7). Officer Capers approached Plaintiff and ordered him to go to the center gate (*id*.). Officer Capers then informed Plaintiff that he was going to be placed in confinement (*id*.). Plaintiff asked to speak with a shift captain, and Officer Capers responded that a shift captain would meet them upon their arrival at the confinement unit (*id*.). When Plaintiff arrived at the confinement unit, a shift captain was not present (*id*.). Plaintiff was approached by officers acting "very much the same way" but Plaintiff "refused to submit to this racist unfair character as portrayed by these officers" and "a conflict started" (*id*.). The shift captain arrived and told Plaintiff that he had sent Officer Capers to escort him to confinement for investigation, but Plaintiff was not "addressed concerning a matter of investigation the entire period of his confinement" (*id*.).

Later that morning, Plaintiff was standing at the door of his cell because the prisoners were ordered to stand there if they wanted breakfast (*id*. at 7-1). When Officer Pabis arrived at Plaintiff's cell, he opened the food flap and slammed it shut, stating, "You refuse to eat" (*id*). Plaintiff alleges that this act provoked a verbal confrontation, which resulted in Officer Pabis "fabricating" a disciplinary report against Plaintiff and denying him breakfast for the rest of the week (five days)

---

[1]The court notes that in the style of the case Plaintiff has listed eight Defendants, including James Crosby, but in the "Defendants" section of the complaint he has omitted Mr. Crosby and listed seven Defendants. In the Statement of Claims section of the complaint, however, Plaintiff refers also to Defendants Capers, Joyner and Bullock. The court will proceed as if Plaintiff has included Crosby, Capers, Joyner and Bullock as Defendants.

(*id*.). A few days later, Plaintiff told Officer Pabis that he (Plaintiff) would show the disciplinary team that Pabis' disciplinary report was fabricated (*id*.). Officer Pabis responded, "Lamar, the best thing for you to do when you go into the D.R. hearing is to keep your mouth shut and take what you got coming! Because whether you know it or not the D.R. team is going to be white" (*id*.). Officer Pabis then told Plaintiff he had been placed in confinement because Officer Capers ordered Plaintiff to pick up trash and Plaintiff refused (*id*.). Plaintiff states he had no knowledge of the incident (*id*.).

A disciplinary hearing, apparently regarding more than one disciplinary report,[2] was conducted by Defendants Brown and Merritt, two white female officers, on August 5, 2004 (*id*. at 7-2). Petitioner "protested" that the allegations were wrong and that he had never seen anything concerning Officer Capers' disciplinary report about Plaintiff's alleged refusal to pick up trash (*id*. at 7-2). In the process of attempting to explain his position, Defendant Merritt ordered Plaintiff removed from the hearing and he was returned to his cell (*id*.). Plaintiff received notification of the disciplinary hearing results and appealed the decision regarding the incident with Officer Capers to the warden, but the appeal was denied (*id*.; *see also* Ex. B-1 - B-5). Plaintiff additionally received notice that Defendants Merritt and Brown filed an allegedly false disciplinary report against him for allegedly threatening them during the disciplinary hearing (*id.* at 7-3; *see also* Ex. C-1). Plaintiff appealed the decision finding him guilty of misconduct during the hearing to the warden and grieved the actions of Defendants Merritt and Brown in filing the allegedly false report, but the grievance was denied (*id*.; *see also* Ex. C-2 – C-5). Plaintiff alleges that the "malicious actions" of Defendants Merritt and Brown put Plaintiff "at risk" and subjected him to "unfair treatment" by many of the male corrections officers thereafter (*id.*).

Plaintiff states that on November 17, 2004, at approximately 5:15 a.m., he was attacked by his cellmate while officers watched and gave him no assistance (*id.*). His cellmate struck Plaintiff in the head with a food tray (*id*. at 7-4). Defendant Westerfield was the only officer in the disciplinary confinement unit at that time and could not assist Plaintiff because the cell door could not be opened with only one officer (*id*.). Defendant Westerfield stood outside the cell and ordered

---

[2] In his amended complaint, Plaintiff refers the court to Exhibits A-1, A-2, and B-1, which are three decisions of the disciplinary team dated August 5, 2004, which address three different infractions.

Case No.: 5:05cv203/RS/EMT

the inmates to stop fighting, while he waited for back-up officers (Doc. 17 at 7-2). When back-up officers, including Defendant Wells, arrived, the officers would not open the door to break-up the attack because of all the blood from Plaintiff's head wound (*id*. at 7-2 – 7-3; Doc. 27 at 7-4). The officers ordered the inmates to stop fighting, and Plaintiff's cellmate complied and released him (Doc. 17 at 7-4). As a result of the attack, Plaintiff suffered a head wound that required eighteen stitches and a fractured nose and ribs (Doc. 27 at 7-4). Because there was no doctor on staff, Defendant Wells locked Plaintiff in another cell while he was still bleeding with only a half-roll of toilet paper left in the cell to wipe the blood running down his face (*id*.). Plaintiff waited in the cell for more than an hour until someone from the next shift took Plaintiff to the medical department (*id*.). He did not receive medical assistance until after 7:30 a.m. (*id*.).

Upon arrival at the medical department, Plaintiff was treated by Defendant Sexton (*id.* at 7-5). Defendant Sexton gave Plaintiff eighteen stitches in his head, but did not give him a physical examination (*id.*). Defendant Sexton told an officer to take Plaintiff back to his confinement cell; GCI does not have an infirmary (*id*.). For the next six days, Plaintiff was forced to stay in a "filthy" confinement cell with "opened" wounds and in pain (*id.*). On Defendant Sexton's orders, the medical department would not provide him with any assistance (*id.*).

Plaintiff filed an informal grievance with Defendant Ramtree, the institutional inspector, requesting an interview with him regarding the attack by his cellmate, the officers' failure to more timely respond to the attack, and the medical department's failure to provide pain medication (*id.*; *see also* Ex. D1). Defendant Ramtree denied the request for an interview, and his only response was to inform Plaintiff that his situation was under review by the Office of the Inspector General (*id.*). Plaintiff filed an appeal with the warden, but the appeal was denied (*id.*; *see also* Exs. D-2, D-6). Plaintiff appealed to the Secretary of the DOC, but the appeal was denied (*id.*; *see also* Exs. D-3 - D-5).

Plaintiff was charged with fighting and attended a disciplinary hearing on November 23, 2004 (*id*. at 7-6). The hearing was conducted by Defendants Joyner and Bullock (*id.*). The disciplinary team found him guilty despite his obvious physical injury and the fact that he was merely defending himself (*id*.). The disciplinary team did not charge Plaintiff's cellmate with assault (*id*.). Plaintiff apparently appealed the disciplinary decision to the warden (*id*.). Although

the warden acknowledged a data entry error concerning the disciplinary team's written decision, the warden denied the appeal (*id.*). Plaintiff alleges the Office of the Inspector General did not investigate his "situation," apparently meaning the cellmate and officers' alleged misconduct during the fight and the disciplinary team's alleged misconduct for finding him guilty and failing to charge the cellmate with assault, because of the data entry error (*id.*).

Plaintiff claims that Defendant Capers caused him to be unjustly punished by including false information in a disciplinary report (*id.* at 8). Defendants Merritt and Brown violated his procedural due process rights during the first disciplinary hearing (*id.* at 8-1a³). Additionally, they violated his equal protection rights because they are white women, and they falsely accused him, a "person of color," of threatening them so that Plaintiff would be unjustly punished (*id.* at 8-1a). Defendants Wells and Westerfield violated Plaintiff's equal protection and Eighth Amendment rights by failing to protect him from the assault by his cellmate and by failing to provide adequate medical care (*id.* at 8-1a – 8-2a). Defendant Sexton violated his Eighth Amendment and equal protection rights by failing to provide pain medication and by placing him in a confinement unit instead of "a much needed infirmary" (*id.* at 8-2a). Defendant Ramtree violated Plaintiff's equal protection rights by failing to act on Plaintiff's allegations of staff misconduct and misinforming the Office of the Inspector General regarding the assault by Plaintiff's cellmate (*id.*). Defendants Joyner and Bullock violated Plaintiff's due process and Eighth Amendment rights by imposing unjust punishment, failing to "impose proper state/federal law" against Plaintiff's attacker, and submitting false or misleading information to the Office of the Inspector General to deter a proper investigation of the assault (*id.* at 8-3a). Warden Whitehead violated Plaintiff's equal protection rights by failing to provide adequate security in the disciplinary confinement unit, allowing the kitchen facility to provide dangerous food serving trays, failing to provide prompt and sufficient medical care, and covering up misconduct by his staff (*id.*).

As relief, Plaintiff seeks a statement by the court enumerating the ways in which Defendants violated his rights and an injunction requiring removal of the dangerous food trays from the

---

³The court notes that Plaintiff's complaint has two pages marked "8-1," two marked "8-2," and two marked "8-3." The court will indicate the first set of 8-1 – 8-3 (statement of claims) as "8-1a – 8-3a" and the second set (relief requested) as "8-1b – 8-3b."

Case No.: 5:05cv203/RS/EMT

confinement unit and placement of an infirmary on all main compounds (*id*. at 8-1b – 8-2b). He also seeks compensatory and punitive damages (*id*. at 8-2b – 8-3b).

Initially, Plaintiff does not allege, nor do the grievances attached to his complaint demonstrate, that he exhausted his administrative remedies as to any of his claims, except his claim against Defendant Ramtree. As Plaintiff was advised in a previous order to amend issued by this court (Doc. 20), Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996, provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Thus, the court should dismiss a case if it determines that exhaustion has not been accomplished. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998); *see also* Anderson v. Singletary, 111 F.3d 801, 805 (11th Cir. 1997). "A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998).

Florida regulations establish a three-step grievance process within state institutions that includes an informal grievance, formal grievance and appeal to the office of the Secretary of the DOC. *See* Fla. Admin. Code rr. 33-103.005 to 103.007 (2003). An inmate is entitled to advance to the next step in the grievance process if he does not receive a timely response to a grievance. *See* Fla. Admin. Code r. 33-103.011(4). Grievances of reprisals may bypass the informal grievance step and may even be filed directly with the Secretary of the DOC. *Id.*, rr. 33-103.006(3), 33-103-007(6). Although an inmate plaintiff may contest the veracity of the responses to his grievances, this does not exonerate him from complying with the grievance process. Indeed, he must correct the deficiencies in the grievance. That a plaintiff may have had to go through additional procedural "hoops" to exhaust does not render the grievance process unavailable to him or otherwise excuse him from the exhaustion requirement. *See* Alexander, 159 F.3d at 1325-27. If the court were to excuse exhaustion on this ground, it would impose an unintended loophole in the PLRA. *See id.* at 1326. As discussed *supra*, an inmate plaintiff must completely exhaust each of his claims prior to bringing them in federal court.

Case No.: 5:05cv203/RS/EMT

In the instant case, the only issue that Plaintiff alleges he presented to the Secretary's office was Defendant Ramtree's failure to interview him regarding the attack by Plaintiff's cellmate. Indeed in the administrative appeal to the Secretary, a copy of which Plaintiff attached to his amended complaint, Plaintiff clearly states that the subject of his appeal is the institutional inspector's (Ramtree) failure to interview him about the attack (*see* Doc. 27, Exs. D-3 - D-6). Plaintiff does not allege that he appealed any of his other grievances to the Secretary's office, nor has he attached any exhibits indicating appeals to the Secretary's office for any of his other claims. Therefore, except for his claim regarding Defendant Ramtree's refusal to interview him, Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies.

Despite Plaintiff's failure to exhaust, some of his claims should be dismissed with prejudice because he has failed to state a claim of denial of his federal rights. *See* 42 U.S.C. § 1997e(c)(2). For example, Plaintiff's only allegation concerning Secretary Crosby is that he is Warden Whitehead's supervisor (Doc. 27 at 8-3a). However, "[i]t is well established that supervisory officials are not liable under [section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Supervisory liability may occur, however, "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or "when a supervisor's custom or policy result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation marks and citations omitted); *see* Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574

(6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)).

In the instant case, Plaintiff does not allege facts suggesting Secretary Crosby personally participated in any of the alleged unlawful conduct or directed any subordinate to act in an unconstitutional manner. Although Plaintiff seeks an injunction requiring Secretary Crosby to implement a policy of removal of food serving trays from isolated confinement units and requiring each institution to have an infirmary (*see* Doc. 27 at 8-2b), Plaintiff does not allege a history of widespread abuse that would put Secretary Crosby on notice of a constitutional deprivation and the need to correct it. Therefore, his claims with respect to Secretary Crosby should be dismissed for failure to state a claim.

Likewise, Plaintiff has failed to state a claim as to Defendant Capers. He alleges that Defendant Capers caused him to be unjustly punished by including false information in a disciplinary report. However, the filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation. *See* Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951-53 (2d Cir. 1986). This is primarily because the Constitution requires only that the inmate be afforded due process at the institutional hearing, which represents his opportunity to expose any such falsities or inaccuracies. Freeman, 808 F.2d at 952; *see also* Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

Additionally, Plaintiff's allegations against Defendants Westerfield, Wells and Whitehead are insufficient to state an Eighth Amendment claim of failure to protect him from harm from his

cellmate. Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for the prison officials responsible for the victim's safety. *Id.* at 834. In order to state a claim for cruel and unusual punishment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting Wright v. El Paso County Jail, 642 F.2d 134, 136 (5th Cir. 1981)); *see also* McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995) ("An official's deliberate indifference to a known danger violates an inmate's Eighth Amendment rights.").

To be held liable under the Eighth Amendment for failing to prevent an attack from other inmates, a correctional official must be found to have known and recklessly disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. When officials become aware of threats to an inmate's health and safety, the Eighth Amendment proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (11th Cir. 2001); McCoy, 47 F.3d at 407. However, while an officer has an affirmative duty to prevent another from violating an individual's constitutional rights, the officer must have a realistic opportunity to prevent the illegal conduct. *See* Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986). Finally, a merely negligent failure to protect an inmate does not state a claim under § 1983. Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986).

In the instant case, Plaintiff does not allege that Defendants Westerfield or Wells had any prior knowledge of a substantial risk of serious harm to Plaintiff's safety posed by Plaintiff's cellmate or the presence of food serving trays in the isolated confinement unit. Furthermore, Plaintiff has failed to allege facts showing that Defendants had a realistic opportunity to prevent the attack by the cellmate. Although Plaintiff alleges that Defendant Westerfield and the responding officers, including Defendant Wells, "stood by and watched as he was being seriously attacked," he

admits that Defendant Westerfield could not come to his aid because the cell door could not be opened with only one officer, and Defendant Westerfield had to wait for back-up officers (*id*. at 7-3 – 7-4). Indeed, Plaintiff concedes that Defendant Westerfield did respond to the attack by calling additional officers and ordering Plaintiff and his cellmate to stop fighting (*id*.; Doc. 17 at 7-2). At most, the delay due to Defendant Westerfield's having to wait for back-up officers suggests negligence, which is insufficient to state a claim under § 1983. Additionally, Plaintiff admits that the other officers responded to the fight by ordering Plaintiff and his cellmate to stop fighting, and his cellmate complied by letting go of him (Doc. 17 at 7-2 – 7-3). Furthermore, in light of the condition of the cell and the fact that the inmates were embroiled in the fight upon the officers' arrival, their failure to immediately open the cell door was not unreasonable. Indeed, Plaintiff admits that his cellmate responded to the officers' orders to stop fighting. Therefore, Plaintiff's claims against Defendants Westerfield and Wells for failure to protect should be dismissed with prejudice.

As to Warden Whitehead, Plaintiff alleges that Defendant Westerfield was the only officer active in the confinement unit that housed over 96 inmates, and he could not immediately open the cell door because of a policy that a cell door could not be opened unless more than one officer was present. However, Plaintiff does not allege that the presence of only one officer was a custom or policy at the institution. Furthermore, to the extent Plaintiff claims that Warden Whitehead's policy of permitting food serving trays in the isolated confinement unit violated the Eighth Amendment, he cannot establish a basis for liability as he does not allege facts that the attack upon him with the food tray was anything but an isolated incident.

Likewise, Plaintiff's Eighth Amendment claim that Defendants Westerfield, Wells, Sexton and Whitehead failed to provide timely and adequate medical treatment is insufficient. Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or medical treatment does not support a claim of cruel and unusual punishment. *Id.*

Stating an Eighth Amendment claim for inadequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.*

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see also* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm"). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[4] A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (internal quotation omitted).

In the instant case, Plaintiff has failed to allege sufficient facts showing that the delay in taking him to the medical department was due to conduct that was more than negligent. Indeed, he alleges that the delay, during which time Defendant Wells placed him in another cell, resulted because there was no doctor on staff at the time of the incident (Doc. 27 at 7-4), which suggests negligence at most. Regarding Plaintiff's placement in the confinement cell rather than an infirmary, Plaintiff admits that GCI does not have an infirmary (*id*. at 7-5), which establishes that Defendant Sexton's failure to place Plaintiff in an infirmary did not result from deliberate indifference to his needs. Defendant Sexton did provide Plaintiff with medical treatment; he received eighteen stitches (*id*.). Although Plaintiff alleges that Defendant Sexton's actions forced him to lay in pain for more than six days with no assistance from the medical department on Defendant Sexton's orders, he has failed to allege that Defendant Sexton's denial of further treatment was anything more than a medical judgment call, or that she was aware that Plaintiff was suffering in pain and refused to respond. To the extent Plaintiff claims that Warden Whitehead's failure to have a doctor on staff and failure to have an infirmary on the compound constituted customs or policies that deprived him of adequate medical care, he has failed to show that these "policies" created a serious risk of harm, and that the Warden knew of this risk and deliberately disregarded it. Because Plaintiff has failed to sufficiently allege that the deprivation of medical

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Case No.: 5:05cv203/RS/EMT

treatment was sufficiently serious, or that Defendants knew of and disregarded a serious risk of harm to his health, his inadequate medical care claim should be dismissed with prejudice.

Regarding Plaintiff's claims that Defendants Joyner, Bullock and Whitehead violated his constitutional rights by failing to charge Plaintiff's attacker with assault and battery, submitting "false information" to the Inspector General, and imposing "unjust punishment," Plaintiff cannot state a constitutional violation. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See* Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L. Ed. 2d 536 (1973). The right to due process and access to the courts does prohibit interference by state agents who intentionally conceal facts about unlawful conduct committed under color of state law and other deprivations of federal rights which § 1983 was designed to remedy. *See* Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003). In the instant case, however, Plaintiff does not allege facts showing the error in the disciplinary team's report was intentional, and he concedes that the error was corrected in a corrected written report.

Moreover, the fact that Defendants Joyner and Bullock found Plaintiff guilty of fighting despite his obvious injury and his explanation that he was merely defending himself does not constitute a violation of due process. The Supreme Court in Wolff v. McDonnell held that to satisfy due process concerning disciplinary proceedings involving the potential loss of gain time, the inmate must receive: (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. 418 U.S. at 564-66. In Superintendent v. Hill, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985), the Court held: "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.*, 472 U.S. at 454 (citation omitted).

In the instant case, Plaintiff does not allege he was deprived of any of the procedural safeguards set forth in Wolff. Furthermore, even if Plaintiff's claim was liberally construed as challenging the sufficiency of the evidence to support the decision of the disciplinary team, he cannot state a due process violation, as he does not allege that the duration and degree of the

restriction placed upon him as a result of the disciplinary team's decision was sufficient to trigger due process protections.[5] *See* <u>Sandin v. Connor</u>, 515 U.S. 472, 486, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995) (thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection); *see also* <u>Rodgers</u>, 142 F.3d at 1253 (placement in administrative confinement for two months did not constitute deprivation of constitutionally protected liberty interest as defined in <u>Sandin</u>). Therefore, Plaintiff's claims involving Defendants Joyner, Bullock and Whitehead's failure to charge Plaintiff's attacker with assault and battery, submission of "false information" to the Inspector General, and violation of due process during the disciplinary hearing should be dismissed with prejudice.

Plaintiff has also failed to state an equal protection violation regarding any of the Defendants. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See* <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest," such as race, gender, or religion. <u>Jones v. Ray</u>, 279 F.3d 944, 946-47 (11th Cir. 2001) (internal quotation marks omitted). Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); <u>Hendking v. Smith</u>, 781 F.2d 850 (11th Cir. 1986). Plaintiff must also allege Defendants acted with the intent to discriminate against him. *See* <u>McClesky v. Kemp</u>, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. <u>GJR Inv., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1367-68 (11th Cir. 1998); <u>Coon v. Ga. Pac. Corp.</u>, 829 F.2d 1563, 1569 (11th Cir. 1987).

---

[5]In his amended complaint, Plaintiff refers the court to Exhibit E-3, which is a copy of the decision of the disciplinary team, Defendants Joyner and Bullock, showing that the punishment imposed was placement in disciplinary confinement for thirty days with no loss of gain time.

Case No.: 5:05cv203/RS/EMT

In the instant case, although Plaintiff alleges equal protection claims against all of the Defendants except Defendants Capers, Joyner and Bullock, Plaintiff has alleged no facts suggesting that he was treated differently from any other group of similarly situated inmates except with respect to his claims that Defendants Merritt and Brown issued a false disciplinary report against him. Although Plaintiff alleges that Defendants Merritt and Brown are white women and falsely accused him, "a person of color," of threatening them so that he would be "unjustly punished," his allegation of discriminatory intent is conclusory and devoid of any factual support. Although Plaintiff alleges that Officer Pabis told him he should "take what you got coming" when he went to the disciplinary hearing because "the D.R. team is going to be white," the statements of Officer Pabis are insufficient to suggest discriminatory intent on the part of Defendants Merritt and Brown. Therefore, Plaintiff's equal protection claims should be dismissed with prejudice.

Finally, although Plaintiff has exhausted his administrative remedies regarding his claim that Defendant Ramtree failed to interview him after the attack by the other inmate, Plaintiff has failed to state a constitutional violation. The fact that Defendant Ramtree failed to interview him and advised him that the matter was under review by the Inspector General does not constitute the intentional concealment of facts held unconstitutional in Chappell. *See* 340 F.3d at 1279. Furthermore, although Plaintiff claims that Defendant Ramtree's failure to interview him violated his equal protection, Plaintiff does not allege any facts suggesting that Defendant Ramtree treated him differently than other similarly situated inmates, nor any facts suggesting that Defendant Ramtree acted with discriminatory intent.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Defendants Crosby, Whitehead, Wells, Westerfield, Sexton, Ramtree, Joyner, Bullock, and Capers be **DISMISSED WITH PREJUDICE** for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That Plaintiff's equal protection claims against Defendants Merritt and Brown be **DISMISSED WITH PREJUDICE** for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3. That Plaintiff's due process claims against Defendants Merritt and Brown be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**DONE AND ORDERED** this 25th day of July 2006.

                                      /s/ *Elizabeth M. Timothy*
                                      **ELIZABETH M. TIMOTHY**
                                      **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No.: 5:05cv203/RS/EMT